charge from their debts. To this end the law requires a surrender of all the property of the bankrupts, and an honest disclosure of every material fact within their knowledge touching the nature of their indebtedness, as necessary conditions of their discharge. If they withhold in their petition the names of any of their copartners, they may defeat their application for a discharge; but it is not incumbent upon any of their creditors to supply the omission, nor can they do so, because in voluntary bankruptcy the law provides for a proceeding in invitum against nonjoining parties, only upon the promotion of their petitioning associates. Nor will such omission affect the rights of creditors against partners who are not parties to the proceeding. The law leaves them in the possession of all the remedies against parties not joined which they had before, while it may, as the penalty of bad faith, deny the fundamental object of the application. And the bankrupt court will in its discretion so control the proceedings as to protect firm creditors from embarrassment in the pursuit of their lawful remedies against recalcitrant partners.

In its initial features the second mode of proceeding differs from the first. Its object is to supersede the control of the bankrupt over the property, and to secure its appropriation to the payment of his debts. Hence, it is adversary to him, and can only be instituted by creditors, a certain proportion of whom, representing a certain proportion of the debtor's liabilities, must unite in the application. [In both modes of procedure, then, essential conditions must exist.][3] In a voluntary application the initiative must be taken by the debtor, and, in case of a partnership, by one or more of its members, at whose instance alone can other members who refuse to join be brought in. If any are excluded who ought to be joined, the court will refuse the petitioners the benefit of the act, and leave them and their associates [who refuse to join them][3] subject to all the remedies to which their creditors might resort, irrespective of the bankruptcy proceedings. But the court cannot aid a creditor in accomplishing by indirection a result which could only be reached directly by the observance of indispensable conditions. Bill dismissed.

## Case No. 2,733.

CITIZENS' NAT. BANK v. LEMING et al.

[This is a state case, and is reported in 8 Int. Rev. Rec. 132.]

CITIZENS OF CINCINNATI, In re. See Case No. 13,628.

[From 18 N. B. R. 279.]
5FED.CAS.—47

## Case No. 2,734.

CITIZENS' SAV. ASS'N v. TOPEKA.

[3 Dill. 376.][1]

Circuit Court, D. Kansas. 1874.[2]

CONSTITUTIONAL LAW—LIMITS OF TAXING POWER—AID TO PRIVATE ENTERPRISES.

1. Taxation can only be authorized for public as distinguished from private purposes.
[See note at end of case.]

2. A statute which authorizes a municipality to issue bonds, that can only be paid by taxation, for the benefit of a manufacturing enterprise of private persons, is void, because it violates the fundamental rights of property, since the purpose is essentially private in its nature, although the public may be incidentally benefited.
[Cited in Jarrott v. Moberly, Case No. 7,223.]
[See note at end of case.]

Action upon interest coupons to bonds issued by the city of Topeka. Demurrer to petition.

A. Ennis, for plaintiff.
A. L. Williams, for defendant.

DILLON, Circuit Judge. The city of Topeka issued one hundred bonds of $1,000 each, as a donation to the King Wrought Iron Bridge Manufacturing and Iron Works Company, of that place, to aid it in establishing therein its manufactory of iron bridges. The bonds are payable to that company and purport to be issued in pursuance of section 76, of an act of the legislature of Kansas, to incorporate cities of the second class, approved February 29, 1872 (Laws 1872, p. 192), and of an act approved March 2, 1872, to authorize cities and counties to issue bonds to build bridges, aid railroads, water-powers, and other works of internal improvement (Laws 1872, p. 110). The purpose for which these bonds were issued appears on their face, and is stated in the petition. It is alleged that the city has paid one year's interest thereon out of funds raised by taxation, and that it was after such payment that the plaintiff became the owner of the bonds and the coupons in suit, for value.

I concede that the legislative provision is broad enough to warrant the issue of these bonds by the city of Topeka, and the demurrer must be overruled if the authority to this end conferred upon the city is one which the legislature had the rightful power to grant. This question I have already decided in the case of the Commercial Bank of Cleveland v. City of Iola [Case No. 3,061]. I have given at some length the reasons for the conclusion that bonds like those in suit are absolutely void. That opinion was deliberately formed; and I am still satisfied with it and adhere to it. The payment of interest can-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in Loan Association v. Topeka, 20 Wall. (87 U. S.) 655.]